UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ERIN MURRAY, Plaintiff,

v. Civil Action No. 3:18-cv-96-DJH-RSE

UNUM LIFE INSURANCE COMPANY OF
AMERICA, Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erin Murray began receiving long-term disability benefits from Defendant Unum Life Insurance Company of America when her medical conditions prevented her from working. After learning that Murray had received a settlement from a motor-vehicle accident, Unum began withholding part of Murray's benefits to cover what Unum considers an overpayment. Murray then filed a complaint pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*, seeking a judgment that Unum's decision to offset her long-term disability benefits by the amount of her settlement was arbitrary and capricious. (Docket No. 1-2) The matter is before the Court on the parties' cross-motions for judgment on the administrative record. (D.N. 24; D.N. 25) For the reasons set forth below, the Court will deny Murray's motion and grant Unum's motion for judgment on the administrative record.

**I.**

Murray held a position as a senior marketing manager with Lexmark International, Inc., for two years. (D.N. 16-1, PageID # 128) Lexmark provided an employee benefit plan to Murray that included a long-term disability (LTD) policy serviced by Unum. (*Id.*) The policy provides that if Murray qualifies for benefits due to a disability rendering her unable to work, Unum will pay a benefit equal to sixty percent of her pre-disability earnings for as long as her disability lasts,

1

through November 20, 2029. (*Id*., PageID # 64) The policy also provides that Unum is entitled to offset the LTD benefit by "deductible sources of income" that stem from the claimed disability, including "[t]he amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise." (*Id*., PageID # 154)

On March 20, 2012, Murray ceased working at Lexmark due to complications from her Meniere's Disease. (*Id*., PageID # 128) On June 4, 2012, Murray was involved in a car accident in Ohio. (D.N. 16-2, PageID # 821) Murray began claiming disability benefits on July 18, 2012; she stated on her claim forms that her disability stemmed from both Meniere's Disease and "[i]ntervertebral [d]isc [p]rotrusion" caused by an "[a]uto [a]ccident" on June 4, 2012. (D.N. 16-2, PageID # 94) Throughout the claim process, both in interviews and through written submissions, Murray continued to complain of both cervical injuries and Meniere's Disease. (*See, e.g.*, *id*., PageID # 281; D.N. 16-2, PageID # 818 ("I was in a motor vehicle accident on June 4, 2012 . . . I suffered both back and neck injuries"), 977–79) In a telephonic interview with Unum's claim representative Doris Stout in August 2012, Murray stated that she had not filed suit in connection with the June 4, 2012 car accident and that she was "unsure if one [would] be [filed] regarding her injuries." (D.N. 16-1, PageID # 284)

Unum granted Murray's application for benefits in August 2012 and promptly began providing her with monthly checks. (D.N. 16-1, PageID # 454) Unum requested information from Murray regarding the car accident in a letter dated May 15, 2013, informing Murray that

> Your Long Term Disability policy offsets for any amount that you receive from a third party by judgment, settlement, or otherwise. As the injuries sustained in the car accident are playing a factor in your inability to continue your Meniere's treatment and subsequently resulting in comorbid restrictions and limitations, we are considering these injuries as contributing to your ongoing disability at this time and any money that you have received as a result, other than for reimbursement of medical expenses and any designated attorney's fees, would be offset. Please advise if you have received any judgment, settlement, monthly payments or

> distributions from litigation or claims to a third party related to this accident. . . . Please be advised that if you have received any payment, an overpayment may exist on your claim.

(D.N. 16-2, PageID # 808) Murray did not provide any substantive response. (D.N. 24, PageID # 1631) Murray evidently filed suit in Ohio seeking compensation for her and her husband's injuries following the car accident, and in 2015 a court order held the other driver at fault. (D.N. 16-3, PageID # 1417) The parties settled and the driver's insurer paid Murray and her husband $275,000 in settlement on October 27, 2015. (*Id.*) Murray maintains that $83,266.55 was allotted to her individually and the rest to her husband for loss of consortium, although she never provided Unum with a copy of the settlement itself. (*Id.*, PageID # 1411) After Murray began receiving Social Security Disability Income benefits in 2016, Unum offset her LTD benefits by the SSDI benefits as a deductible source of income. (D.N. 24, PageID # 1629; D.N. 16-3, PageID # 1332–33) In 2017, after repeated requests from Unum, Murray finally submitted documentation of the car accident, evidence of the settlement she received, and additional materials indicating that her settlement would not fully cover her anticipated future medical expenses. (D.N. 16-3, PageID # 1395–1401; 1412)

Two Unum employees considered Murray's claim and determined that the car accident settlement might not be a deductible source of income, but they suggested seeking the advice of offset specialist Andy Gaither. (*Id.*, PageID # 1454) Gaither concluded that the settlement proceeds Murray received from the car accident constituted a deductible source of income and could be offset against her LTD benefits. (*Id.*, PageID # 1453) Unum adopted Gaither's interpretation, informed Murray of its decision on June 23, 2017, and began reducing Murray's LTD benefits to reflect the value of the settlement offset. (*Id.*, PageID # 1466–68) Murray appealed the decision (*id.*, PageID # 1153–54); her appeal was denied. (*Id.*) Unum recovered a

$22,636.98 lump sum as reimbursement for the alleged overpayment and continues to offset Murray's LTD benefits. (*Id.*, PageID # 1561–64)

Murray filed her first amended complaint in Jefferson Circuit Court on January 5, 2018, alleging that Unum's offset decision violated the terms of her policy and seeking return of the lump sum she paid to Unum. (D.N. 1-2, PageID # 11) Unum removed the case to this Court on February 15, 2018, invoking the Court's federal-question jurisdiction because ERISA governs the LTD policy at issue.[1] (D.N. 1, PageID # 2) Magistrate Judge Dave Whalin instructed the parties to file simultaneous dispositive motions. (D.N. 19) In response, Unum filed its "brief," seeking judgment on the administrative record that its decisions were not arbitrary and capricious and that it was entitled to retain the lump sum it recovered from Murray and continue to offset Murray's benefits. (D.N. 24) Murray moved for "summary judgment" (D.N. 25), claiming that Unum's interpretation of the policy was arbitrary and capricious, or alternatively that the repayment provision was unenforceable, and that she was entitled to attorney fees and costs; Unum responded to Murray's motion.[2] (D.N. 29)

---

[1] In its answer to the complaint Unum also asserted a crossclaim, seeking a judgment holding that the recoupment it already made was appropriate and that it is entitled to continue offsetting future benefit payments. (D.N. 7) Unum indicated in its brief, however, that the crossclaim was filed in an "overabundance of caution" (D.N. 24, PageID # 1634), and that granting the crossclaim would reach the same result as upholding Unum's benefits decision. (*Id.*) The Court thus need not separately analyze Unum's counterclaim.

[2] Although Murray's motion is captioned as one for summary judgment (D.N. 25), the motion does not cite Rule 56 and proceeds as a motion for judgment on the administrative record would. In *Wilkins v. Baptist Healthcare Sys., Inc.* the Sixth Circuit held that "Rule 56 does not comport" with the needs of a district court reviewing an ERISA case. 150 F.3d 609, 619 (6th Cir. 1998). The *Wilkins* court held that "the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition," but that district courts should instead employ "a *de novo* review based solely upon the administrative record." *Id.* The parties stipulated to the applicability of arbitrary and capricious review (D.N. 22), which is consistent with *Wilkins*. The most recent scheduling order also directed the parties to file simultaneous "dispositive motions." (D.N. 19) The Court therefore construes the two submissions (D.N. 24; D.N. 25) as cross-motions for judgment on the administrative record.

## II.

The parties agree that ERISA governs the LTD policy at issue here. (*See* D.N. 22) Although challenges to benefits decisions under ERISA are based upon the administrative record available to the insurer at the time of the final denial, *see Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998), and are generally reviewed under a de novo standard, *see Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 505–06 (6th Cir. 2005), "[w]hen the plan vests the administrator with discretion to interpret the plan . . . the [C]ourt reviews the benefits denial under the 'arbitrary and capricious' standard." *Corey v. Sedgwick Claims Mgmt. Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017) (citing *Sprangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002)). This standard is also known as "*Firestone* deference." *See Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 267 (6th Cir. 2018). Here, the policy at issue gives Unum "discretionary authority to make benefit determinations," including "determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions" of the policy. (D.N. 16-5, PageID # 1610) The plan thus satisfies the standard for applying *Firestone* deference as set out in *Clemons*. *See* 890 F.3d at 267. Regardless, the parties have already stipulated that the arbitrary-and-capricious standard applies. (*See* D.N. 22)

Review under this standard is highly deferential. The Court must uphold a decision by the plan administrator if it was "the result of a deliberate, principled reasoning process" and is "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd*, *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003). Even if

the plan administrator's conclusion conflicts with what the Court would have decided, "as long as there is a reasonable basis for the decision, it must be upheld." *Senzarin v. Abbot Severance Pay Plan for Emps. of KOS Pharms.*, 361 F. App'x 636, 640 (6th Cir. 2011).

### III.

**A.     Applicability of *Contra Proferentum***

As an initial matter, the parties cite cases which appear to differ regarding the level of deference the Court should grant to Unum's interpretation of the policy terms. *See Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 (6th Cir. 2000) (holding that ambiguous ERISA policy terms should be construed against the drafter); *c.f. Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 81 (6th Cir. 2009) ("Under the arbitrary and capricious standard, courts must favor a plan administrator's interpretation over an equally reasonable contrary interpretation."). But the Court's decision is controlled by *Clemons*, where the Sixth Circuit resolved the uncertainty surrounding this question by holding that "when *Firestone* applies, a court may not invoke *contra proferentum* to 'temper' arbitrary-and-capricious review." 890 F.3d at 266. Murray relies on the alleged ambiguity of the terms "amount that you receive from a third party . . . by judgment[,] settlement or otherwise" and "same disability" to support her claim that the terms should be construed against Unum. (D.N. 25-1, PageID # 1651–52) *Clemons* forecloses that argument by holding that *contra proferentum* is inapplicable under arbitrary-and-capricious review in this context. 890 F.3d at 266. Therefore, even if the terms are ambiguous, the Court must defer to Unum's interpretation unless the interpretation itself was arbitrary and capricious. *See Clemons*, 890 F.3d at 266 (holding that *contra proferentum* is incompatible with arbitrary-and-capricious review); *Price v. Bd. of Trs. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (citing *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)) (holding that under

6

arbitrary-and-capricious review the court must uphold the plan administrator's interpretation of the policy so long as it is reasonable).

**B.      Unum's Interpretation of the Policy**

Murray essentially makes three remaining arguments in support of her position that Unum erroneously decided to offset her benefits: (1) that Unum's decision to offset the settlement she received from the car accident because it qualifies as a "deductible source of income" was arbitrary and capricious; (2) that Unum's interpretation of the term "same disability" was arbitrary and capricious; and (3) that Unum's interpretation of the policy is entitled to little deference because of a conflict of interest.

      **1.      "Deductible Source of Income"**

Murray argues that Unum's decision that the settlement she received from the June 8, 2012 accident qualifies as a deductible source of income was arbitrary and capricious. To resolve this claim, the Court must determine whether it was unreasonable for Unum to consider the settlement Murray received from the car accident in Ohio an "amount that [Murray] receive[d] from a third party . . . by judgment settlement or otherwise" such that it could be offset against her LTD benefits. (D.N. 16-1, PageID # 154)

Murray and her husband received a $275,000 settlement from the other driver's insurer following the accident. (D.N. 16-3, PageID # 1417) The other driver's insurer is a "third party" and the money Murray and her husband received was in settlement of claims they brought against the driver. *See Arnold v. Unum Life Ins. Co. of Am.*, 726 F. Supp. 2d 1063, 1070 (N.D. Cal. 2010) (finding that employer who provided settlement of claim qualified as "third party" under identical plan because the parties to the plan are the recipient of the benefits and Unum); *see also Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) ("[T]he plain language of an ERISA

plan should be given its literal and natural meaning."). Once Unum received from Murray confirmation and documentation of the settlement, Unum employees realized that the settlement related to the same cervical injuries that Murray had been claiming since the outset. (D.N. 16-3, PageID # 1453) Unum then determined that Murray was "continuing to contend medical impact and reduction in functionality in part due to the MVA injuries she sustained" and therefore "[t]he Third Party Settlement which was related to the MVA is considered an offset to the LTD benefits." (*Id.*) The money Murray received, after the offset for attorney fees, is therefore a source of deductible income under the plain language of the policy—and Unum's interpretation was not unreasonable. *See Harding v. Aetna Life Ins. Co.*, No. 2:15-CV-411-DBH, 2016 WL 3983242, at *2–3 (D. Me. July 25, 2016) (holding that a settlement from a car accident constituted a "disability payment from another source caused by a third party" under a similar policy and finding insurer's decision to offset LTD benefit by settlement amount reasonable).

Murray claims that the settlement constituted "no fault coverage," a category expressly excluded as a source of deductible income under the policy, because Kentucky is a "no fault" state. (D.N. 25-1, PageID # 1652; D.N. 16-2, PageID # 985) As Unum points out, however, this argument fails on two fronts. (D.N. 29, PageID # 1684) First, Unum did not attempt to offset Murray's award based on the no-fault coverage she received in the form of Personal Injury Protection benefits—indisputably "no-fault coverage" under the policy—but only offset her benefits by the amount she received as a settlement. (D.N. 24, PageID # 1628) Secondly, the accident took place in Ohio, not Kentucky. (D.N. 16-2, PageID # 821) Either way, Murray's unsupported contentions do not undermine the reasonableness of Unum's interpretation. Because Unum's decision was the "result of a deliberate, principled reasoning process" and was "supported by substantial evidence," the Court finds that Unum's decision to offset Murray's benefits by the

8

amount she received in settlement for the June 10, 2012 car accident was not arbitrary and capricious. *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

    **2.    "Same Disability"**

Next, the Court must determine whether Unum's interpretation of the term "same disability" was arbitrary and capricious. Courts are split as to the correct definition of "same disability" in this context—whether it refers to the same period of disability or the same disabling condition. *See, e.g.*, *Rustad-Link v. Providence Health & Servs.*, 306 F. Supp. 3d 1224, 1228 (D. Mont. 2018) (holding under de novo standard that "same disability" did not imply "same time period" of disability); *Gruber v. Unum Life Ins. Co. of Am.*, 195 F. Supp. 2d 711 (D. Md. 2002) (same); *cf. Petitt v. UnumProvident Corp.*, 774 F. Supp. 2d 970, 985 (S.D. Iowa 2011) (upholding insurer's interpretation of "same disability" as "same time period of disability"); *Campos v. Mut. of Omaha Ins. Co.*, 23 F. App'x 614 (8th Cir. 2001) (same). But the Court need not decide which interpretation is correct, because Murray has consistently claimed disability for both her Meniere's Disease *and* from neck and back injuries stemming from the car accident in Ohio. *See, e.g.*, *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922 (5th Cir. 2008).

The Fifth Circuit faced a similar factual scenario in *Sanders*. *Id*. There, the plaintiff alleged that Unum could not offset her disability benefits based on the SSDI she received for her psychological condition because she suffered from both physical and mental conditions that could not be considered the "same disability" under the policy. *Id*. at 926. The court noted the split of authority regarding the proper definition of "same disability", but ultimately held that "this disputed interpretation is not controlling on the issue before us. Even if the SSDI payment only applied to Sanders' mental disability, Unum had always based its payments to Sanders on both

9

mental and physical impairments. . . . [T]hey arise out of the same disability as support[s] Unum's benefits." 553 F.3d at 925–26; *see also Carden v. Aetna Life Ins. Co*, 559 F.3d 256, 262–63 (4th Cir. 2009) (holding that insurer's decision to offset plaintiff's settlement from asbestosis against his LTD benefits for vertigo was reasonable because the conditions were comorbid and both contributed to his disability). Following the logic of *Sanders* and applying arbitrary-and-capricious review, in *Ciaramitaro v. Unum Life Insurance Co. of America* the Sixth Circuit upheld Unum's decision to offset the plaintiff's LTD benefits by income derived from both her brain and lumbar injuries because her underlying claim for LTD benefits stemmed from both conditions, rendering the "same disability" argument moot. 521 F. App'x 439, 434–35 (6th Cir. 2013).

The administrative record shows that Murray has been claiming disability benefits for both Meniere's Disease and the injuries she sustained in the June 4, 2012 car accident since her initial application. (D.N. 16-1, PageID # 94) Her claim form dated July 18, 2012 lists both Meniere's Disease and "Intervertebral Disc Protrusion" caused by an "auto accident" on June 4, 2012, as the sources of her disability. (*Id.*) In Unum's August 31, 2012 letter approving Murray's LTD benefits and confirming the details of the coverage, Unum stated: "We approved your benefits because you are unable to perform the duties of your occupation due to the symptoms related to your medical condition**s** of Meniere's Disease beginning March 21, 2012 *and* pending evaluations and possible surgery related to a motor vehicle accident that occurred on June 4, 2012." (D.N. 16-1, PageID # 455) (emphasis added). That the car accident followed the Meniere's diagnosis does not change the fact that Unum has been paying Murray LTD benefits based on both conditions the whole time. The circumstances in both *Ciaramitaro* and *Sanders* were similar. Unum has provided Murray benefits based on Meniere's Disease and the cervical injuries from the car accident throughout the claims period; "they arise out of the same disability as support[s] Unum's benefits." *Sanders*, 553

F.3d at 925–26. The administrative record thus supports Unum's assertion that it has always paid Murray's LTD benefits based on both conditions, and therefore the car-accident settlement stems from the "same disability."

Murray points to the fact that Unum stopped requiring updates on her cervical condition but continued to demand them for her Meniere's Disease to support her argument that the two are not the "same disability." (D.N. 25-1, PageID # 1654) Unum's explanation, citing medical testimony in the administrative record as support, is that this deviation "was simply a recognition of the fact that the neck condition might get better if Murray decided to have surgery . . . but her Meniere's was unlikely to do so." (D.N. 29, PageID # 1688; D.N. 16-3, PageID # 1181) The administrative record also indicates that a Unum physician found that Murray's neck condition was disabling standing alone, and therefore without surgery Murray's inability to work would continue indefinitely. (D.N. 16-2, PageID # 953) The Court finds that Unum's explanation for discontinuing updates on Murray's cervical condition is reasonable under the circumstances here, and is supported by evidence in the administrative record. In sum, the Court concludes that Unum's determination that Murray's car-accident settlement was compensation for the "same disability" for which she claimed benefits, and thus was properly offset against her LTD, was not arbitrary and capricious and therefore cannot be disturbed. *See Glenn*, 461 F.3d at 666.

   3.   **Unum's Alleged Bias**

Murray argues that Unum's offset decision is inherently suspect—and thus entitled to little deference—because it was made by Unum employees, and any decision by a Unum employee will inevitably be slanted in Unum's favor. (D.N. 25-1, PageID # 1656) Murray provides no evidence to substantiate this argument, and before the Court can lend her assertion any substantial weight Murray must provide "significant evidence in the record that the insurer was motivated by self-

interest." *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006). Further, the Sixth Circuit has held that the arbitrary and capricious "standard is not altered by the existence of [the defendant's] inherent conflict of interest created by acting as both the administrator and issuer of the Plan . . ." *Tate v. Gen. Motors LLC*, 538 F. App'x 599, 601 (6th Cir. 2013). The Court, taking Unum's inherent conflict "into account as a factor in determining whether [Unum's] decision was arbitrary and capricious" as it must, *Davis v. Ky. Fin Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989), nonetheless concludes that Murry has not shown that Unum's decision to offset Murray's car-accident settlement against her LTD benefits was arbitrary and capricious. And Murray has failed to submit any evidence to support her assertion. *See Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 859–60 (W.D. Ky. 2017), *aff'd*, 722 F. App'x 470 (6th Cir. 2018) (finding that plaintiff failed to show defendant acted arbitrarily and capriciously despite defendant's "inherent conflict-of-interest in both evaluating and paying benefits claims.").

### C. Enforceability of the Offset Provision

Murray argues that even if the Court finds that Unum did not act arbitrarily and capriciously in determining that it was entitled to offset her LTD benefits, "the overpayment provision should be deemed unenforceable." (D.N. 25-1, PageID # 1657) Murray cites both *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356 (2006), and the "make whole" doctrine in support of this contention. The Court is not persuaded by either argument.

#### 1. Particularity Requirement Under *Sereboff*

*Sereboff* dictates that a plan administrator may equitably recover overpayment from a beneficiary only if the plan identifies a "particular fund distinct from the [beneficiary's] general assets, and a particular share of that fund to which [the administrator] was entitled." 547 U.S. at 357. Discussing this particularity requirement in a case involving a similar Unum policy, the Sixth Circuit held that

> [a]t first blush, it seems that this language would not satisfy the requirements of *Sereboff* because there is no express lien against a specifically identified fund. When we pause to consider that Unum is seeking to recover overpayments, however, the provisions actually do satisfy the requirements of *Sereboff*. That is, the Plan's overpayment provision asserts a right to recover from a specific fund distinct from Gilchrest's general assets—the fund being the overpayments themselves—and a particular share of that fund to which the plan was entitled—all overpayments due to the receipt of [deductible sources of income], but not to exceed the amount of benefits paid.

*Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 45–46 (6th Cir. 2007); *see also Hall v. Liberty Life Assurance Co. of Boston*, 595 F.3d 270 (6th Cir. 2010) (upholding *Gilchrest* and finding that overpayments themselves constituted a particular fund satisfying *Sereboff*); *Hagan v. Nw. Mut. Life Ins. Co.*, No. 3:15-CV-00298-CRS, 2017 WL 4542775, at *7 (W.D. Ky. Oct. 11, 2017) (upholding enforceability of recovery of overpayments as to work activities under *Sereboff*). The policy at issue here, likely in recognition of *Sereboff*, contains an even stronger clause than those found to be adequate in the cases cited above, providing that

> Unum . . . is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party . . . . Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

(D.N. 16-5, PageID # 1610) The policy establishes an express lien over the fund—the overpayments. *Cf. Gilchrest*, 255 F. App'x at 45. Thus, both the policy itself and relevant precedent make clear that the overpayments themselves constitute the "particular fund" that Unum seeks to draw from, and the plan therefore satisfies the requirements of *Sereboff*. 547 U.S. at 357.

### 2. "Make-Whole" Doctrine

Murray also claims that "the LTD policy does not effectively disclaim the 'make-whole' doctrine," and that Unum may not recover the full amount of overpayment. (D.N. 25-1, PageID # 1658) Generally, the make-whole doctrine prevents an insurer from enforcing its subrogation rights until the insured has been made whole as to his or her injury. *See Copeland Oaks v. Haupt*,

13

209 F.3d 811, 813 (6th Cir. 2000). An insurer may defeat this doctrine by "conclusively disavowing" it by establishing (1) a priority to the funds recovered and (2) a right to any full or partial recovery. *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959–60 (6th Cir. 2001).

Unum has effectively established a priority to the overpayment funds because the policy establishes that Unum has a lien on those funds. Specifically, the policy provides that

> Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party. This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the policy. Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

(D.N. 16-5, PageID # 1610) "A 'lien,' in the parlance of the industry" establishes priority, *Philips v. Humana Health Plans of Ky.*, No. 98-6368, 2000 WL 1872058, *3 (6th Cir. 2000) (unpublished), and therefore this policy language confirms Unum's priority to the overpayment funds. *See Caesars Entm't Operating Co. v. Johnson*, 2015 WL 1137080, at *12 (W.D. Ky. Mar. 12, 2015) (holding that the insurer established a lien because "[W]hat is clear . . . is that a plan need not explicitly invoke the term 'priority' to establish a priority, so long as it is clear that the plan's entitlement to the funds is superior to all others."). As to the second prong of the test, the Sixth Circuit has made clear that plan language that merely requires the insured to reimburse the plan for the amounts of payments made is insufficient to establish the insurer's right to recovery. *Hiney*, 243 F.3d at 958. Unum's policy explicitly stipulates that Unum is entitled to recovery "even if the amount you receive from the third party is less than the actual loss suffered by you." (D.N. 61-5, PageID # 1610) The policy is unambiguous: Unum has a right to any recovery, full or partial. *Cf. Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949 (6th Cir. Feb. 6, 2004) (finding that plan language that did not refer to "full or partial" recovery did not effectively disavow the make-whole doctrine). The policy establishes Unum's priority to the overpayment

14

funds because it creates an equitable lien and specifically reserves Unum's right to recovery—even if the insured is not fully compensated. (D.N. 16-5, PageID # 1610) Whether Murray was made whole from her expenses, medical or otherwise, is thus irrelevant. The Court finds that the policy effectively disavowed the make-whole doctrine, and that Unum is entitled to recover the overpayment amount from Murray.

## IV.

Murray has not carried her burden of establishing that Unum acted arbitrarily or capriciously in deciding that her accident settlement qualified as third-party income, or that the settlement stemmed from "the same disability" for which she had been receiving LTD benefits. Nor has she shown that Unum is not entitled to recover the overpayment amounts from her under either *Sereboff* or the make-whole doctrine. The Court therefore finds that Unum's decisions were reasonable and that Unum is entitled to keep the lump sum it recovered from Murray and continue offsetting her benefits. Finding no merit in any of Murray's claims, the Court holds that Murray has not "achieved some success on the merits" as required to recover attorney fees and costs in the ERISA setting. *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 254 (2010). Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Murray's motion (D.N. 25) is **DENIED**.

(2) Unum's motion for judgment on the administrative record (D.N. 24) is **GRANTED**.

(3) A separate judgment will be entered this date.